## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

DENNIS MANN,          )
                               )
         Plaintiff,      )
                               )
         v.              )        Cause No.: 4:22-cv-00113
                               )        **JURY TRIAL REQUESTED**
CORYDON POLICE CHIEF MATT   )
KITTERMAN, in his official capacity, and, )
OFFICER MICHAEL ANDRY, in his   )
individual and official capacities,    )
                               )
         Defendants.    )

## COMPLAINT FOR DAMAGES

Plaintiff, Dennis Mann, for his Complaint for Damages against Corydon Police Chief Matt Kitterman, in his official capacity, and Officer Michael Andry, in his individual and official capacities, states as follows:

### INTRODUCTION

1.    Plaintiff seeks money damages against Defendants for violations of rights as guaranteed under the United States Constitution and/or Indiana law.

### JURISDICTION AND VENUE

2.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983.

3.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.    Venue lies in the United States District Court for the Southern District of Indiana because all or a substantial portion of these events or omissions giving rise to this Complaint

occurred in or around Harrison County, Indiana, which is located in the Southern District of Indiana. *See* 28 U.S.C. § 1391(b).

5. Plaintiff timely served a Notice of Tort Claim upon Defendants pursuant to Indiana Code § 34-13-3-8 on February 2, 2021.

6. Plaintiff timely filed this Complaint to bring the claims set forth herein.

## PARTIES

7. Dennis Mann (hereinafter "Mr. Mann" or "Plaintiff Mann") is an adult citizen of the United States of America and a resident of Corydon, Indiana, at all times relevant to this Complaint.

8. Corydon Police Chief Matt Kitterman (hereinafter "Chief Kitterman" or "Defendant Kitterman") was at all times relevant to this Complaint, the duly appointed Chief of Police of the Corydon Police Department and employee of the Town of Corydon, Indiana.

9. Chief Kitterman is being sued in his official capacity in his role as the Chief of Police of the Corydon Police Department and an employee of the Town of Corydon, Indiana.

10. Officer Michael Andry (hereinafter "Officer Andry" or "Defendant Andry") is, or was at all times relevant to this Complaint, a law enforcement officer and/or employee of the Corydon Police Department and the Town of Corydon, Indiana.

11. Officer Andry is being sued in his individual capacity, as well as his official capacity in his role as an officer of the Corydon Police Department and employee of the Town of Corydon, Indiana.

## FACTUAL BACKGROUND

12. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

13. Mr. Mann is and was at all times relevant to this Complaint the owner and manager of the Grand Trails RV Park located at 205 North Mulberry Street, Corydon, Indiana 47112.

14. On September 5, 2020, Mr. Mann was notified that a trespasser had parked a pickup truck on one of his sites.

15. At that time, the Grand Trails RV Park was running low on available RV sites to rent, and Mr. Mann travelled to the site to ask the trespasser to move his truck.

16. The trespasser was later identified as Mr. Steve Cissel (hereinafter "Mr. Cissel").

17. Mr. Mann approached Mr. Cissel and requested that he move his pickup truck.

18. Mr. Cissel became argumentative and refused to move his pickup truck.

19. At that time, Mr. Cissel was not a guest and had been notified by Mr. Mann that he was a trespasser on his property.

20. After Mr. Cissel refused to move his truck, Mr. Mann called 9-1-1 to request an officer on scene to assist with the situation.

21. Officer Andry was dispatched to the scene and arrived shortly thereafter.

22. After arriving, Officer Andry spoke with Mr. Mann.

23. During that conversation, Mr. Mann advised Officer Andry that he was the business owner and owner of the property.

24. Mr. Mann further advised Officer Andry that Mr. Cissel was trespassing on his property and had become combative and refused to move his truck off of Mr. Mann's lot.

25. Officer Andry then spoke with Mr. Cissel and returned to speak with Mr. Mann shortly thereafter.

26. Officer Andry advised Mr. Mann that Mr. Cissel complained that Mr. Mann hit him and spit on him, events which Officer Andry did not witness and events which in fact did not occur.

27. Rather than assisting with the trespasser on Mr. Mann's property, Officer Andry then informed Mr. Mann that he was placing Mr. Mann under arrest.

28. Officer Andry spoke authoritatively and commanded Mr. Mann to turn around with his hands behind his back.

29. At that time, Officer Andry did not have reasonable suspicion to believe that Mr. Mann had committed a crime.

30. At that time, Officer Andry did not have probable cause to believe that Mr. Mann had committed a crime.

31. At that time, Officer Andry did not have reason to believe that Mr. Mann presented a danger to Officer Andry.

32. Mr. Mann complied with Officer Andry's order and turned around to be handcuffed.

33. Mr. Mann then took a step toward an electrical system and pointed in an effort to provide context to Officer Andry as to why Mr. Cissel needed to be removed from his property.

34. Officer Andry then tackled Mr. Mann from behind, forcing Mr. Mann's face into the gravel.

35. Officer Andry then placed his knee on Mr. Mann's neck and/or applied a choke hold on Mr. Mann.

36. Mr. Mann could not breath as Officer Andry repeatedly yelled for Mr. Mann to give up.

37. Mr. Mann attempted to say, "I give up," but could not speak as he was being choked by Officer Andry.

38. Mr. Mann is a seventy-two-year-old man suffering from diabetes and a survivor of two heart attacks and a heart bypass surgery.

39. Officer Andry easily overpowered Mr. Mann yet continued to apply a chokehold to Mr. Mann's neck.

40. Eventually Officer Andry released Mr. Mann from the choke hold and handcuffed Mr. Mann.

41. Mr. Mann's face had bled so severely that his shirt was soaked with blood.

42. An EMS team arrived and transported Mr. Mann to the Harrison County Hospital, where Mr. Mann was diagnosed with lacerations to the face, abrasions, contusions, and three broken ribs.

43. As a result of Defendants' actions and/or omissions, Plaintiff suffered severe and ongoing mental trauma as well as physical pain and suffering, for which Mr. Mann incurred medical expenses.

44. On or about September 17, 2020, criminal charges were filed against Mr. Mann related to the arrest in Harrison County Superior Court under cause number 31D01-2009-CM-000539.

45. Mr. Mann was taken into custody and detained in the Harrison County Jail for several days, resulting in a delay to his medication, loss of work, and damage to his reputation in the community.

46. Officer Andry prepared documents and/or an affidavit for probable cause for subsequent filing under cause number 31D01-2009-CM-000539, which falsely alleged the Plaintiff resisted arrest despite the Defendants' unlawful actions.

47. On August 30, 2022, the charges against Mr. Mann under cause number 31D01-2009-CM-000539 were dismissed, a judgment in his favor and a judgment which reflects his innocence of the alleged charges.

**COUNT I: Fourth and Fourteenth Amendments**
**Unlawful Seizure, Unlawful Arrest, and/or False Imprisonment**
**Defendant Andry, in his Individual Capacity**

48. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

49. Defendant Andry is a "person" within the meaning of 42 U.S.C. § 1983.

50. Defendant Andry's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the Corydon Police Department.

51. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

52. To prevail under § 1983, a plaintiff must establish that the government's conduct constituted a seizure and that the seizure was unreasonable. *See Bentz v. City of Kendallville*, 577 F.3d 776, 789 (7th Cir. 2009).

53. A seizure for Fourth Amendment purposes is an intentional limitation of a person's freedom of movement. *See id.*

54. Where a seizure and/or arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure, and/or false imprisonment. *Id.* (quoting *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)).

55. On or about September 5, 2020, Defendant Andry detained, seized, and/or arrested Plaintiff without probable cause.

56. Defendant Andry's actions or omissions on or about September 5, 2020, effectuated an unreasonable seizure of, unlawful arrest upon, and/or falsely imprisoned the Plaintiff.

57. Defendant Andry's actions and/or omissions on or about September 5, 2020, caused Plaintiff to suffer harm by constituting a violation and a deprivation of Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

58. Defendant Andry's actions and/or omissions on or about September 5, 2020, were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

59. Defendant Andry's conduct is actionable under 42 U.S.C. § 1983.

**COUNT II: Fourth and Fourteenth Amendments**
**Excessive Force**
**Defendant Andry, in his Individual Capacity**

60. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

61. Defendant Andry is a "person" within the meaning of 42 U.S.C. § 1983.

62. Defendant Andry's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the Corydon Police Department.

63. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

64. The Fourth Amendment prohibits law enforcement officers from employing greater force than is reasonably necessary to make an arrest.

65. Law enforcement officers are required to act in an objectively reasonable manner in light of the totality of the facts and circumstances confronting them.

66. During their interactions with Plaintiff, Defendant Andry used greater force than was reasonably necessary to effectuate Plaintiff's arrest.

67. Specifically, Defendant Andry applied greater force than was necessary by tackling Mr. Mann to the ground, resulting in lacerations and contusions to the face as well as broken ribs, and choking him, thereby threatening his life and causing serious bodily injury.

68. The actions and/or omissions of Defendant Andry were objectively unreasonable based on the totality of circumstances the Defendant encountered.

69. As a result, the Defendant violated Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

70. Those violations caused the Plaintiff to suffer compensable injury.

71. The Defendant's actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

72. The Defendants' actions and/or omissions are actionable under 42 U.S.C. § 1983.

## COUNT III: *Monell* Claims
## Defendant Kitterman and Defendant Andry, in their Official Capacities

73. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

74. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

75. "A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and

promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

76. An official capacity claim raised against an official are essentially claims against the agency itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

77. Town of Corydon, Indiana, is a municipal entity located in Harrison County, Indiana, and the State of Indiana, which includes the Corydon Police Department, and employs, and/or employed at all relevant times to this Complaint, Defendants Kitterman and Andry.

78. At all times relevant to this Complaint, Defendant Kitterman was the duly appointed Chief of Police of the Corydon Police Department.

79. At all times relevant to this Complaint, Defendant Kitterman was the ultimate and final policy making authority for the training, policies, customs, and/or practices of the Corydon Police Department.

80. Defendant Kitterman promulgated and effectuated widespread policies, practices, and/or customs within the Corydon Police Department which facilitate the use of excessive force, including the unwarranted and unnecessary deployment of choke holds, by its officers when effectuating arrests.

81. Specifically, Defendant Kitterman promulgated and effectuated widespread policies, practices, and/or customs within the Corydon Police Department which failed to:

   a. adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds, against members of the public, including the Plaintiff;

b. adequately train officers and/or deputies regarding objectively reasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds against members of the public, including the Plaintiff;

c. adequately protect members of the public, including the Plaintiff, from objectively unreasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds, by officers and/or deputies;

d. adequately identify objectively unreasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds, against members of the public, including the Plaintiff, by officers and/or deputies;

e. adequately document objectively unreasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds, against members of the public, including the Plaintiff, by officers and/or deputies;

f. adequately penalize and/or deter objectively unreasonable treatment and use of force, including specifically the unwarranted and unnecessary deployment of choke holds, against members of the public, including the Plaintiff, by officers and/or deputies.

82. The widespread nature of the policies, practices, and/or customs within the Corydon Police Department which facilitate the use of excessive force by its officers when effectuating arrests is evidenced by Defendant Andry's violent arrest of the Plaintiff.

83. In addition to the use of force in the Plaintiff's arrest, it is common practice for officers of the Corydon Police Department to unreasonably apply choke holds to effectuate other arrests.

84. In this way, Defendants Kitterman and Andry, in their official capacities, violated the Plaintiff's rights by maintaining and effectuating policies and practices that were the moving force driving the foregoing constitutional violations.

85. The above-described widespread policies and practices were so well settled so as to constitute *de facto* policy within the Corydon Police Department.

86. Defendant Kitterman's ratification of the above-described widespread policies and practices led to the acceptance of that conduct and the actions of the officers in this case.

87. Defendant Kitterman's ratification of the above-described widespread policies and practices led to a culture of indifference, tolerance, and/or encouragement of the officers' uses of excessive force that has permeated the Corydon Police Department.

88. As evidenced by the use of excessive force, including tackling and choking the Plaintiff, in the Plaintiff's arrest and other arrests, the Town of Corydon, Indiana, and/or the Corydon Police Department were on notice of the above-described widespread policies and practices which encourage, allow, condone, and/or ignore the use of excessive force by officers and/or deputies against members of the public.

89. Defendants Kitterman and Andry's acceptance and ratification of the above-described widespread policies and practices amounted to deliberate indifference to Plaintiff.

90. The Plaintiff suffered compensable injury as a direct and proximate cause of the above-described widespread policies and practices.

## COUNT IV: Battery
### Defendant Andry, in his Individual Capacity

91. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

92. A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor.

93. However, the offense is a Class A misdemeanor if it results in bodily injury to any other person, a Level 6 Felony, if it results in moderate bodily injury, and a Level 5 Felony, if it results in serious bodily injury. *See* Ind. Code § 35-42-2-1.

94. Defendant Andry battered Plaintiff by tackling him to the ground and choking him.

95. Plaintiff suffered serious bodily injury as a result of the battery, including specifically, lacerations and contusions to the face as well as broken ribs.

96. The actions of Defendant Andry were malicious, willful, and/or wanton.

97. Defendant Andry committed tortious acts against the Plaintiff while working within the scope of their employment with the Corydon Police Department and the Town of Corydon, Indiana.

98. Plaintiff suffered compensable harm and damages as a result of the Defendant's illegal and unlawful actions.

## COUNT V: Confinement
## Defendant Andry, in his Individual Capacity

99. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

100. A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement, a Level 6 Felony. *See* Indiana Code § 35-42-3-3(a). However, the offense is a Level 4 Felony if it results in moderate bodily injury to any other person, Indiana Code § 35-42-3-3(b)(2), and a Level 3 Felony if it results in serious bodily injury. *See* Indiana Code § 35-42-3-3(b)(3)(A).

101. Defendant Andry criminally confined Plaintiff when he confined him to the ground in a chokehold on the Plaintiff's own property.

102. Defendant Andry's criminal confinement of Plaintiff while he was on the ground resulted in serious bodily injury to Plaintiff, including specifically lacerations and contusions to the face as well as broken ribs.

103. The actions of Defendant Andry were malicious, willful, and/or wanton.

104. Defendant Andry committed tortious acts against the Plaintiff while working within the scope of their employment with the Corydon Police Department and the Town of Corydon, Indiana.

105. Plaintiff suffered compensable harm and damages as a result of the Defendant's illegal and unlawful actions.

### COUNT VI: Malicious Prosecution
### Officer Andry, in his Individual Capacity

106. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

107. "The law of malicious prosecution in Indiana requires the plaintiff to prove the following elements: (1) the defendant 'instituted or caused to be instituted an action against the plaintiff'; (2) the defendant acted with malice and (3) without probable cause; and (4) the action 'was terminated in the plaintiff's favor.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001).

108. Officer Andry instituted or caused to be instituted the criminal charges against Mr. Mann on or about September 17, 2020, in Harrison County Superior Court under criminal cause number 31D01-2009-CM-000539.

109. Specifically, Officer Andry prepared documents and/or an affidavit for probable cause for subsequent filing under cause number 31D01-2009-CM-000539, which falsely alleged the Plaintiff resisted arrest despite the Defendants' unlawful actions.

110. Officer Andry's institution of the criminal action against Mr. Mann was made maliciously and without probable cause in an effort to mask his violation of Mr. Mann's rights during his arrest.

111. Mr. Mann suffered damages as a result of Officer Andry's malicious actions, including being taken into custody and detained in the Harrison County Jail for several days, resulting in a delay to his medication, loss of work, and damage to his reputation in the community.

112. On August 30, 2022, the charges against Mr. Mann under cause number 31D01-2009-CM-000539 were dismissed on August 30, 2022, a judgment in his favor and a judgment which reflects his innocence of the alleged charges.

113. The Plaintiff suffered compensable harm as a direct and proximate result of Defendant Andry's illegal and unlawful actions, including but not limited to, loss of employment, social stigma, and loss of his freedom to travel.

### COUNT VII: False Imprisonment and/or False Arrest
### Officer Andry, in his Individual Capacity

114. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

115. The tort of false imprisonment occurs when there is an "(1) unlawful (2) restraint (3) upon one's freedom of movement or the deprivation of one's liberty (4) without consent." *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1207 (Ind. Ct. App. 2017).

116. Furthermore, when "a claim for false imprisonment stems from an alleged false arrest, 'we need not make a separate analysis for the former.'" *Tallman v. State*, 13 N.E.3d 854 (Ind. Ct. App. 2017) (quoting *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007)).

117. "Where the plaintiff claims false arrest, [they] must demonstrate the absence of probable cause to make the arrest." *Ali v. Alliance Home Health Care, LLC,* 53 N.E.3d 420, 432 (Ind. Ct. App. 2016).

118. Defendant Andry effectuated a false imprisonment and/or false arrest against Mr. Mann on September 5, 2020.

119. Specifically, Defendant Andry unlawfully restrained Mr. Mann's freedom of movement and deprived his liberty when he authoritatively commanded Mr. Mann to turn around and place his hands behind his back.

120. Defendant Andry restrained Mr. Mann's freedom of movement and deprived his liberty when he tackled Mr. Mann to the ground.

121. Defendant Andry restrained Mr. Mann's freedom of movement and deprived his liberty when he performed a choke hold on Mr. Mann.

122. Defendant Andry took these actions without the consent of Mr. Mann, who was instead requesting assistance to remove a trespasser from his property.

123. Defendant Andry placed Mr. Mann under arrest without reasonable suspicion that Mr. Mann had committed a crime.

124. Defendant Andry placed Mr. Mann under arrest without probable cause that Mr. Mann had committed a crime.

125. The criminal charges filed against Mr. Mann related to his arrest by Defendant Andry under cause number 31D01-2009-CM-000539 were dismissed on August 30, 2022, a judgment in his favor and a judgment which reflects his innocence of the alleged charges.

126. Officer Andry prepared documents and/or an affidavit for probable cause for subsequent filing under cause number 31D01-2009-CM-000539, which falsely alleged Defendant Andry had probable cause to arrest Mr. Mann.

127. The Plaintiff suffered compensable harm as a direct and proximate result of Defendant Andry's illegal and unlawful actions, including but not limited to, loss of employment, social stigma, loss of his freedom to travel, and serious bodily injury.

## REQUESTED RELIEF

128. Plaintiff respectfully requests:

    a. Damages including compensatory and punitive damages;

    b. Reasonable attorney's fees pursuant to 42 U.S.C. 1988;

    c. All damages and interested allowed under Indiana Code § 34-24-3 *et seq.*;

    d. All appropriate interest on all amounts that are recovered;

    e. All appropriate injunctive relief;

    f. The costs and expenses incurred in the prosecution of this action; and

    g. All other just and proper relief.

## DEMAND FOR A JURY TRIAL

129. Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States and Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully submitted,

*/s/ Austin Andreas*
Austin Andreas, #35155-53
Bradley Keffer, #27195-49
Keffer Hirschauer LLP

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing **Complaint** was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Austin Andreas*
Austin Andreas, #35155-53
Bradley A. Keffer, #27195-49

Keffer Hirschauer LLP
230 East Ohio Street, Suite 400
Indianapolis, Indiana 46204
Keffer@IndyJustice.com
T: (317) 857-0160
F: (855) 641-5311